**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | : | |
|---|---|---|
| STEVEN VERRETTE, | : | |
|     Plaintiff, | : | No. 3:20-cv-501 (KAD) |
| | : | |
| v. | : | |
| | : | |
| BRAGDON, et al., | : | |
|     Defendants. | : | |
| | : | |

**INITIAL REVIEW ORDER**

Plaintiff, Steven Verrette ("Verrette"), currently confined as a pretrial detainee at Corrigan-Radgowski Correctional Center ("Corrigan") in Uncasville, Connecticut, filed this complaint *pro se* pursuant to 42 U.S.C. § 1983. Verrette contends, *inter alia,* that the defendants, Unit Manager Lieutenant Bragdon and Counselor Blackman, were deliberately indifferent to his safety and failed to protect him from harm. Verrette seeks damages as well as declaratory and injunctive relief. The complaint was received on April 14, 2020. Verrette's motion to proceed *in forma pauperis* was granted on April 15, 2020.

**Standard of Review**

Under section 1915A of title 28 of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v.*

*Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**Allegations**

Verrette was a pretrial detainee confined at Corrigan-Radgowski Correctional Center ("Corrigan") on charges of sexual assault in the third degree. Doc. No. 1 ¶ 8. Verrette's cellmate, inmate Hernandez, learned of Verrette's charges and began threatening Verrette and requesting sexual favors or he would tell the other inmates about Verrette's charges. *Id.* ¶ 9.

On September 9, 2019, Verrette submitted an inmate request to Counselor Blackman requesting a cell change because he feared for his safety. *Id.* ¶ 10. When Verrette spoke to Counselor Blackman in detail about his fears later in the week, she asked if he had been sexually assaulted, said she did not believe him, and told him to speak to Lieutenant Bragdon. *Id.*

On September 12, 2019, Verrette told Lieutenant Bragdon everything that had happened. *Id.* ¶ 11. He requested a cell transfer because the situation was affecting his anxiety and depression disorders and inmate Hernandez was becoming bolder and more persistent in his threats and sexual requests. *Id.* Lieutenant Bragdon said Verrette would not receive special treatment and told Verrette to tell him or an officer on duty if anything actually happened. *Id.* On September 17, 2019, Verrette filed a grievance asking that he or inmate Hernandez be moved to

another cell. *Id.* ¶ 12.

On September 19, 2019, inmate Hernandez threatened Verrette's family, said he was going to reveal Verrette's charges the next day, and sexually assaulted Verrette. *Id.* ¶ 13. A correctional officer saw the sexual assault and wrote an incident report but did not intervene. *Id.*

On September 23, 2019, Verrette was called to Lieutenant Bragdon's officer as part of the investigation into the incident. *Id.* ¶ 14. Verrette confirmed that he had been sexually assaulted and said that he feared it would happen again. *Id.* ¶ 15. Lieutenant Bragdon said he was sorry that Verrette had been sexually assaulted but then said, "think of your victim, see how it feels." *Id.* Verrette was taken to the medical unit where he spoke to several people and then spoke to the state police. *Id.* When Verrette returned to his cell, inmate Hernandez was not there. *Id.* Shortly thereafter, Verrette was transferred to a different housing unit. *Id.*

As a result of the incident, Verrette suffers from insomnia, nightmares, generalized fear, heightened anxiety, and difficulty passing stool. *Id.* ¶ 18.

**Discussion**

Verrette asserts five claims for relief: (1) failure to protect him from harm in violation of his Fifth and Fourteenth Amendment rights; (2) discrimination because of his criminal charges in violation of the Fourteenth Amendment Equal Protection Clause; (3) cruel and unusual punishment in violation of the Eighth Amendment; (4) violation of rights under the Prison Rape Elimination Act; and (5) deliberate indifference to safety. He seeks monetary damages, declaratory relief and injunctive relief in the form of a single cell assignment and mental health treatment.

**Failure to Protect and Deliberate Indifference to Safety**

In his first claim, Verrette contends that the defendants failed to protect him from harm. In his fifth claim, Verrette alleges that the defendants were deliberately indifferent to his safety. The standard for review of a claim for failure to protect is the same as that for deliberate indifference to safety. *See Orr v. Marquis*, No. 3:18-cv-1908(MPS), 2019 WL 161504, at *3 (D. Conn. Jan. 10, 2019) (noting that the standard was the same for failure to protect and deliberate indifference to safety claims asserted by sentenced inmates). Thus, the Court considers the claims together.

In *Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473 (2015), the Supreme Court held that a pretrial detainee asserting a claim for use of excessive force need only meet an objective standard. In *Darnell v. Piniero*, 849 F.3d 17 (2d Cir. 2017), the Second Circuit held that the reasoning from *Kingsley* should be applied to other pretrial detainee claims involving deliberate indifference including claims for deliberate indifference to safety or failure to protect from harm. *Id*. at 35-36 & 33 n.9; *see Hodge v. City of New York*, 2019 WL 1455170, at *2 (S.D.N.Y. Apr. 1, 2019) (applying *Darnell* to claim for deliberate indifference to risk of harm).

To state a claim for deliberate indifference to safety or failure to protect, Verrette must allege facts which demonstrate, that he was confined under conditions that posed a substantial risk of serious harm and that the defendants both knew that he faced a substantial risk of serious harm and failed to take reasonable efforts to abate that harm. *See Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Lewis v. Swicki*, 629 F. App'x 77, 79 (2d Cir. 2015) (citing *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)). Indeed, "a pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee

4

even though the defendant-official knew, or should have known, that the condition imposed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. Negligent conduct will not suffice. *Id.* at 36 (detainee must show that defendant acted recklessly or intentionally, not merely negligently).

Under *Kingsley*, objective reasonableness is determined "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." 135 S. Ct. at 2473. Verrette alleges that he reported the escalating threats and requests for sexual favors to both defendants in detail, but nothing was done until he was sexually assaulted. Verrette's allegations are sufficient at this stage of litigation to state a plausible failure to protect/deliberate indifference to safety claim.

**Equal Protection**

The Equal Protection Clause protects individuals from invidious discrimination. It does not mandate identical treatment for each individual or group of individuals. Instead, it requires that similarly situated persons be treated the same. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985). To state an equal protection claim, Verrette must allege facts showing: (1) he was treated differently from similarly situated individuals and (2) the difference in or discriminatory treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).

Verrette alleges that he is being treated differently based upon the nature of his pending charge, sexual assault, and he alleges that the defendants moved other incompatible inmates.

5

Doc. No. 1 ¶ 16. Verrette alleges no facts suggesting discrimination based on his membership in a protected class. However, construing Verrette's allegations liberally, as the Court must on initial review, Verrette has stated a plausible claim that the defendants, acting with a malicious bad faith intent to punish him when they refused to take action on his claims until he had been assaulted. The Court will permit the equal protection claim to proceed for further development of the record.

Alternatively, Verrette may seek to advance an equal protection claim on the theory that he has been irrationally singled out as a "class of one." *Enquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601 (2008). To state a claim under the class of one theory, Verrette "must show 'an extremely high degree of similarity between [himself] and the persons to whom [he] compare[s] himself].'" *Ruston v. Town Bd. for Town of Shaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)). However, Verrette has not identified any inmates who were treated differently under the same or sufficiently similar circumstances to state a "class of one" equal protection claim. *See Nielson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (The plaintiff's circumstances and the other person's circumstances must be "prima facie identical.") (internal quotation marks and citation omitted), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008); *Webb v. Arnone*, No. 3:17-cv-1624(SRU), 2018 WL 3651333, at *5 (D. Conn. Aug. 1, 2018) (concluding plaintiff "ha[d] not met the requirements necessary to state a plausible class-of-one equal protection claim" because he failed to assert any "facts to show that he was essentially identical to the other former death row inmates who are no longer subject to the out-of-cell restraint policy").

**Eighth Amendment**

Verrette asserts an Eighth Amendment claim for cruel and unusual punishment. Claims of pretrial detainees are considered under the Fourteenth Amendment, not the Eighth Amendment. *See Darnell*, 849 F.3d at 29 (claims of pretrial detainees are governed by Fourteenth Amendment while claims of sentenced prisoner are governed by Eighth Amendment). Verrette alleges that he was a pretrial detainee at the time of the incident. Thus, the Eighth Amendment affords him no protection. The Eighth Amendment claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Prison Rape Elimination Act**

Verrette contends that the defendants violated his rights under the Prison Rape Elimination Act ("PREA"), 34 U.S.C. § 30301, *et seq*. The PREA was enacted to address the issue of rape in prison. It directs the compilation of data and statistics concerning incidents of prison rape and directs the development and implementation of national standards to detect, prevent, and punish prison rape. *See* 34 U.S.C. § 30302-03, 30306-07. The PREA does not provide any specific rights to prisoners. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 279-80 (2002) (absent "an 'unambiguous' intent to confer individual rights," such as a private right of action, the court will not imply the existence of such a right in a federal funding provision). Accordingly, district courts have consistently held that there is no private right of action for prisoners to sue prison officials for failure to comply with the PREA. *See Abrams v. Erfe*, No. 3:17-cv-1570(CSH), 2018 WL 691714, at *16 (D. Conn. Feb. 2, 2018) (PREA does not create private right of action for prisoners) (citing cases). The claim for violation of rights under the PREA is dismissed pursuant to 28 U.S.C. § 1915(a)(b)(1).

**Declaratory Relief**

7

Verrette seeks a declaration that the defendants violated his constitutional rights. Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships." *Colabella v. American Inst. of Certified Pub. Accountants*, 10-CV-2291 (KAM) (ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sep. 28, 2011) (citations omitted). As such, "[d]eclaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages." *Orr v. Waterbury Police Dep't*, No. 3:17-CV-788 (VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018). In *Orr*, the court dismissed the request for declaratory judgment that the defendants had violated the plaintiff's Fourth Amendment rights during his arrest because the request "concern[ed] only past actions." *Id.* Verrette seeks a similar declaration—that past conduct was unconstitutional.

In addition, "dismissal of a declaratory judgment action is warranted where the declaratory relief plaintiff seeks is duplicative of his other causes of action." *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 443 (S.D.N.Y. 2016) (citation, alterations, and ellipsis omitted). If Verrette were to prevail on his failure to protect or deliberate indifference to safety claim, a judgment in his favor would serve the same purpose as a declaration that the defendants violated his constitutional rights. Thus, his request for declaratory relief is not distinct from the relief sought in his section 1983 claims. *See, e.g., United States v. $2,350,000.00 in Lieu of One Parcel Case of Property Located at 895 Lake Avenue, Greenwich, Connecticut*, 718 F. Supp. 2d 215, 229 n.7 (D. Conn. 2010) (noting that if property is not forfeited, receiver-claimants would have been shown to be prevailing innocent owners and declaration to that effect would be redundant). The request for declaratory relief is dismissed pursuant to 28 U.S.C. § 1915(a)(b)(1).

**Orders**

Verrette's Eighth Amendment and PREA claims, and the request for declaratory relief are dismissed pursuant to 28 U.S.C. § 1915A(b). The case will proceed on the Fourteenth Amendment claims for deliberate indifference to safety or failure to protect and denial of equal protection against defendants Bragdon and Blackman in their individual capacities for damages and their official capacities to the extent Verrette seeks injunctive relief.

The Court enters the following orders:

(1)     The Clerk shall verify the current work addresses for each defendant with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant on or before **May 12 2020**, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     The Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service.  The U.S. Marshal is directed to effect service of the Complaint on the defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, on or before **May 12, 2020** and to file a return of service within thirty (30) days from the date of this order.

(3)     The Clerk shall send plaintiff a copy of this Order.

(4)     The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response, either an answer or motion to dismiss, within sixty (60) days from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **November 21, 2020.** Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed by **December 21, 2020**.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

(11)     The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to plaintiff.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of April 2020.

/s/
Kari A. Dooley
United States District Judge