UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEVEN VERRETTE,<br>         Plaintiff, | :<br>:<br>: |
| v. | :     CASE NO. 3:20-cv-501 (KAD) |
| | : |
| BRAGDON, et al.,<br>         Defendants. | :<br>: |

**MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 26]**

Kari A. Dooley, United States District Judge

On September 19, 2019, the plaintiff, Steven Verrette ("Verrette"), while incarcerated as a pretrial detainee at Corrigan-Radgowski Correctional Center ("Corrigan"), alleges that he was sexually assaulted by his cellmate. Thereafter, on April 14, 2020, Verrette commenced this civil rights action in which he alleges that the defendants, Lieutenant Bragdon and Counselor Blackman, were deliberately indifferent to his safety and failed to protect him from the assault and denied him equal protection of the laws (all Fourteenth Amendment claims). Pending before the Court is the defendants' motion for summary judgment. Therein, the defendants argue that Verrette's claims are demonstrably false and therefore fail as a matter of law. Alternatively, they assert that they are protected by qualified immunity. Despite being afforded additional time to do so, Verrette did not file any opposition to the motion. For the following reasons, the motion is GRANTED.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule

56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense …." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*,

224 F.3d 33, 41 (2d Cir. 2000).

**Facts**[1]

On March 21, 2019, Verrette was admitted to the custody of the Department of Correction and incarcerated at Corrigan as a pretrial detainee.  Defs.' Local Rule 56(a)1 Statement, Doc. No. 26-9, ¶ 1.  In June 2019, Verrette was assigned a mental health score of 3 and was provided mental health treatment commensurate with that classification.  *Id.* ¶ 2.

On June 26, 2019, Verrette met with his case manager, LCSW Placido.  *Id.* ¶ 3.  In her assessment notes, LCSW Placido stated that Verrette was "unaware of his effect on others and how his behavioral choices affect others."  *Id.* ¶ 4.  She also noted that Verrette complained about his cellmate and stated that he knew his cellmate from the community.  *Id.*

On August 8, 2019, Verrette went to the medical unit for sick call complaining about bedwetting and frequent urination which Verrette attributed to routine anxiety.  *Id.* ¶ 5.  The nurse referred Verrette to the doctor.  *Id.*  Later that month, Verrette met with LCSW Placido and told her that his sister-in-law's brother was in his housing unit and was threatening to tell other inmates about Verrette's criminal charges.  *Id.* ¶ 6.  LCSW Placido thought that Verrette had been purchasing items for the other inmate to keep him quiet.  *Id.*

In September 2019, Defendant Counselor Blackman was transferred to G-Pod, Verrette's

---

[1] The facts are taken from the defendants' Local Rule 56(a) Statements and supporting exhibits.  Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party.  Each denial must include a specific citation to an affidavit or other admissible evidence.  D. Conn. L. Civ. R. 56(a)3.

The defendants informed Verrette of this requirement.  *See* Notice to Self-Represented Litigant Concerning Motion for Summary Judgment, Doc. No. 26-10.  As Verrette has not opposed the motion, the defendants' statements are deemed admitted.  *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.").

housing unit. *Id.* ¶ 7. She met privately with Verrette to address inmate complaints about Verrette's poor personal hygiene. *Id.* ¶ 8. She provided him a personal hygiene kit and arranged for the barber to cut his hair. *Id.* ¶¶ 9-12. No one, neither Verrette nor anyone else, ever told Counselor Blackman that Verrette had been threatened, subjected to sexual comments, sexually threatened, or sexually assaulted. *Id.* ¶ 13.

Defendant Lieutenant Bragdon was a Unit Manager in G-Pod. *Id.* ¶ 14. In September 2019, Lieutenant Bragdon spoke with Verrette a few times about his cellmate, inmate Hernandez, but the conversations focused on Verrette's view of Hernandez as "odd" and Verrette's wish to move to a different housing unit. *Id.* ¶ 16. Lieutenant Bragdon agreed to move Verrette but stated that he had to follow procedures and check availability of another cell. *Id.* ¶ 17. At no time did Verrette tell Lieutenant Bragdon that he felt threatened, was subjected to sexual comments, was sexually threatened, or was sexually assaulted. *Id.* ¶ 18. Nor did Lieutenant Bragdon receive or become aware of any inmate request or grievance in which Verrette complained of being subjected to threat of assault or sexual assault or being assaulted by Hernandez or any other inmate. *Id.* ¶ 19.

On September 21, 2019, Verrette submitted a request seeking mental health treatment because he was experiencing stress relating to his court dates. *Id.* ¶ 20. The following day, Verrette submitted a request for mental health treatment complaining that inmate Boulet made sexual advances and threats. *Id.* ¶ 21. The nurse referred the request to Lieutenant McCormack who spoke with Verrette on September 23, 2019. *Id.* ¶¶ 22-23. In his conversation with Lt. McCormack, Verrette denied any sexual abuse by Boulet but said that Hernandez had been making sexual advances toward him for the last two weeks. *Id.* ¶ 24. Verrette reported that,

4

around September 16, 2019, Hernandez had watched him use the bathroom and then ejaculated into his underwear. *Id.* ¶ 25.  The next day, Verrette unwillingly helped Hernandez ejaculate because Hernandez had threatened to tell the unit that Verrette had sexually assaulted his daughter. *Id.* ¶ 26.  Finally, on September 19, 2019, Hernandez tried to anally penetrate Verrette, but Verrette was able to resist him by saying "Stop" in a loud voice. *Id.* ¶ 27.  Verrette also told Lieutenant McCormack that he was never sexually penetrated in any way. *Id.* ¶ 28.  Lieutenant McCormack told Verrette to document all the encounters on inmate interview forms he provided, *id.* ¶ 29, which Verrette did. *Id.* ¶¶ 30-31.

After reviewing the written statements, Lieutenant McCormack observed that the handwriting on the September 21, 2019 mental health request was different from Verdette's handwritten statement about the sexual abuse. *Id.* ¶ 32.  When questioned, Verrette admitted he did not write the request describing sexual advances by Boulet. *Id.* ¶ 33.

In light of the allegations, Lieutenant McCormack initiated Prison Rape Elimination Act protocols. *Id.* ¶ 34. Hernandez was removed from the cell, which was secured as a crime scene until cleared by the state police. *Id.* ¶ 36.  Hernandez was interviewed by Lieutenant Belleville and provided a written statement denying Verrette's charges. *Id.* ¶¶ 37-38.  Hernandez said that other inmates had warned him to stay away from Verrette because he was a pedophile. *Id.* ¶ 39. Hernandez said that he told Verrette that he did not want to share a cell with a pedophile and that, if he got out of prison he would find Verrette's daughter and help her ensure that Verrette was never released. *Id.*

Also per the PREA protocols, the Connecticut State Police were notified. Later that evening, Trooper Bowyer interviewed Verrette and also reviewed the statements given by

5

Verrette to Lieutenant McCormack and Hernandez to Lieutenant Belleville. *Id.* ¶ 40. Verrette told Trooper Bowyer he had never made any complaints about Hernandez until he was interviewed that day by Lieutenant Belleville.[2] *Id.* ¶ 41.

The trooper examined the cell but found no evidence to support Verrette's claims. *Id.* ¶ 42. The trooper then discussed Verrette's allegations with Lieutenant Belleville. *Id.* ¶ 43. Lieutenant Belleville said that Verrette's allegation that he had shared a cell with Hernandez for three weeks and had been subjected to sexual advances that whole time was false because Hernandez and Verrette had been cellmates only since September 12, 2019, not for three weeks. *Id.*

Verrette was taken to the medical unit to be examined. *Id.* ¶ 44. Verrette told CN McDonald that his cellmate was trying to force him to submit to sexual activity by threatening to reveal his criminal charges. *Id.* ¶ 45. Verrette described the incident as one time, and only threats and intimidation with no physical contact. *Id.* CN McDonald described Verrette as calm and stable with no tearing or anxiety. *Id.* ¶ 46.

Verrette was also seen in the mental health unit by LPC Binezewski. *Id.* ¶ 47. She noted that the PREA claim was closed because of inconsistent allegations by Verrette. *Id.* ¶ 48. Verrette was not interested in speaking about the PREA incident. *Id.* ¶ 49. Verrette told LCSW Placido that someone else wrote something about the PREA claim; he did not say anything. *Id.* ¶ 51.

The trooper closed the case without an arrest because the incidents could not be substantiated as a result of conflicting statements and lack of corroborating evidence. *Id.* ¶ 54.

---

[2] Verrette appears to have confused Lieutenant Bellevill with Lieutenant McCormack.

Lieutenant Bragdon was not working when Verrette spoke with Lieutenant McCormack and did not return to work until after the investigation was closed. *Id.* ¶ 64. Verrette never told either defendant that he feared for his safety or that he had been subjected to sexual improprieties. *Id.* ¶59.

**Discussion**

There are two claims remaining in this case, deliberate indifference to safety/failure to protect and denial of equal protection of the laws.

**Failure to Protect**

"[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A claim that a correctional officer failed to protect an inmate from attack rises to the level of a constitutional violation only when the officer acted with "'deliberate indifference' to a substantial risk of serious harm to an inmate." *Id.* at 828.

Failure to protect claims of pretrial detainees are considered under the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (claims of pretrial detainees are considered under the Fourteenth Amendment while claims of sentenced prisoners are considered under the Eighth Amendment). To prevail on his claim, the pretrial detainee must show that, objectively, the challenged condition (here, the threat of harm at the hands of another inmate) was sufficiently serious to implicate a deprivation of the right to due process and that the officer "acted intentionally to impose the alleged condition, or

recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.  Negligence is insufficient to satisfy this component.  *Id.* at 36 (detainee must show that defendant acted recklessly or intentionally, not merely negligently).

The officer's conduct is judged under a standard of objective reasonableness, which is determined "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).  Thus, a showing after the fact that the wiser course may have been to move the inmate to another housing unit does not demonstrate deliberate indifference.  *Shell v. Brun*, 585 F. Supp. 2d 465, 470 (W.D.N.Y. 2008).

The defendants do not argue that the risk of sexual assault by another inmate would not be considered serious.  Rather, they assert that Verrette cannot establish deliberate indifference because neither defendant had any knowledge that Verrette was in fear for his safety or that Hernandez posed any threat to Verrette.

Although Verrette did not file any opposition to the motion for summary judgment, because the complaint is verified, it can be considered an affidavit in opposition to the motion for summary judgment. *See Curtis v. Cenlar FSB*, 654 F. App'x 17, 20 (2d Cir. 2016). To summarize the Complaint, Verrette alleges that, on September 9, 2019, he sent an inmate request to Counselor Blackman stating that he feared for his safety and, during that week, told her about the threats and sexual comments by Hernandez.  Compl. Doc. No. 1 ¶ 10.  He also alleges that, on September 12, 2019, he told Lieutenant Bragdon about the threats and sexual requests from

Hernandez. *Id.* ¶ 11. He claims to have filed a grievance regarding the situation with Hernandez on September 17, 2019. *Id.* ¶ 12. Verrette further alleges that Lieutenant Bragdon spoke to him on September 23, 2019 as part of an investigation into an incident report and states that he told Lieutenant Bragdon that Hernandez had sodomized him. *Id.* ¶¶ 14-15.

In support of their motion, the defendants assert that each of these allegations are demonstrably false. First, each defendant submitted an affidavit in which they unequivocally deny any allegation that Verrette expressed any concern or fear to them regarding Hernandez. Notably, insofar as Hernandez did not become Verette's cellmate until September 12, 2019, Verrette could not have sent an inmate request to Counselor Blackman on September 9, 2019 expressing concerns regarding Hernandez. Next, the defendants submitted copies of the record from the September 2019 PREA investigation which further refutes these allegations. First, it was Lieutenant McCormack who interviewed Verrette on September 23, 2019, not Lieutenant Bragdon. Indeed, Lieutenant Bragdon was not working on September 23, 2019. Further, the allegations are contradicted by Verrette's multiple statements to investigators and DOC personnel. For example, Verrette told Lieutenant McCormack that the sexual requests started on September 16, 2019, that he was coerced into sexual conduct on September 17, 2019 and that although he was threatened no sexual assault had occurred. Defs.' Mem. Ex. 6, Doc. No. 28-7 at 7. Verrette repeated a similar version of events to the nurse, stating that the incident occurred one time, between September 16 and 20, and that it was a threat with no physical contact. *Id.* at 12. In his handwritten statement, Verrette repeats that the incidents occurred between September 16 and 19, 2019. Finally, and perhaps dispositively, Verrette told Trooper Bowyer that he never reported any threats or sexual requests by Hernandez before he was interviewed on September

23, 2019.  Defs.' Mem. Ex. 7, Doc. No. 28-8 at 3-4. Thus, under Verrette's own version of events given at the time of the investigation, no threats or sexual advances occurred prior to September 16, 2019. It is axiomatic therefore that Verrette could not have complained about such incidents on September 9, 2019 and September 12, 2019 as he alleges.  And it bears repeating that Verrette affirmatively told Trooper Bowyer that he had not made any complaints about Hernandez before September 23, 2019. Combined with the unequivocal affidavits of defendants Bragdon and Blackman, the defendants have met their initial burden of establishing that they are entitled to judgment as a matter of law insofar as they have established that they had no knowledge that Verrette was in fear for his safety or that Hernandez posed any risk of harm to Verrette.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Vega v. Rell*, 611 F. App'x 22, 25-26 (2d Cir. 2015) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted)) (district court properly rejecting affidavit's counter-assertions because they were contradicted by medical records). Accordingly, Verrette was required to come forward with evidence to show a genuine issue of material fact.  He has not done so.  The defendants' motion for summary judgment is granted.

    **Equal Protection**

Verrette argues that the defendants treated him differently because of his criminal charges.  They refused to change his cell in response to his complaints of sexual threats but did so for inmates not charges with sexual offenses.  As the court has determined above that Verrette

has presented no evidence to show that he informed either defendant of his concerns, there is no factual support for his equal protection claim.  The equal protection claim fails as well.

**Conclusion**

Defendants' motion for summary judgment [**Doc. No. 26**] is **GRANTED** for the reasons stated.

The Clerk is directed to enter judgment and close this case.

**SO ORDERED** this 25th day of May 2021 at Bridgeport, Connecticut.

                                                 /s/
                                              Kari A. Dooley
                                              United States District Judge